IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
<u>Norfolk Division</u>

**MICHAEL MARELLA,**

        **Plaintiff,**

v.                                                  CIVIL ACTION NO.: _____

**NORTHERN TOOL & EQUIPMENT COMPANY, INC.,**

        **Defendant.**

## COMPLAINT

COMES NOW the Plaintiff, MICHAEL MARELLA, by counsel, as and for his Complaint against the Defendant, NORTHERN TOOL & EQUIPMENT COMPANY, INC., states as follows:

### Jurisdiction

1. This is a diversity of citizenship tort action within the meaning of 28 U.S.C. §1332.

### The Parties

2. At all relevant times herein, the Plaintiff has been a citizen of the Commonwealth of Virginia and was living in the City of Virginia Beach.

3. At all relevant times herein, the Defendant was and is a corporation, organized and existing under the laws of the State of Minnesota and doing business in the Commonwealth of Virginia.

4. At all times relevant herein, the Defendant was in the business of designing, manufacturing, marketing, selling and distributing personal and commercial equipment, including aluminum arched folding ramps, to consumers such as the Plaintiff.

1

### Venue

5. The venue of the Court is proper pursuant to 28 U.S.C. §1391(b)(2) as the incident giving rise to this cause of action occurred in Accomack County, Virginia.

### Facts and Liability

6. On January 26, 2020, in Accomack County, Virginia, the Plaintiff was injured when an aluminum arched folding ramp he purchased from the Defendant broke causing him to fall and receive serious personal injuries.

7. At the time of the incident, the Plaintiff was utilizing a pair of aluminum arched folding ramps he purchased from the Defendant to load his personal all-terrain vehicle (ATV) into the bed of his pickup truck.

8. The aluminum arched folding ramps were designated by the Defendant as Item #53181.

9. The subject aluminum arched folding ramps were designed, marketed, sold and distributed by the Defendant as ramps to be utilized for loading equipment and other items, including ATVs, onto trucks and other vehicles such as was owned by the Plaintiff and as having a load capacity of 1500 pounds per pair and 750 pounds per ramp.

10. On the basis of the Defendant's design and marketing, the Plaintiff purchased the subject ramps in Virginia at some point prior to January 26, 2020.

11. On January 26, 2020, while the Plaintiff was loading his ATV onto his truck utilizing the pair of ramps, one of the ramps snapped and broke causing the Plaintiff to fall and the ATV to fall on top of him resulting in serious injuries.

12. At the time of the incident, the combined weight on the Defendant's ramps of the Plaintiff and his ATV was less than 1500 pounds and less than 750 pounds on any single ramp.

## Count I – Defective Design

13. The Defendant knowingly and purposely designed the subject ramps as aluminum arched folding ramps with, *inter alia*, welded construction, side rails, numerous cross members and a lone single support cross member on the underside of each ramp near the folding hinge and adjacent to where the side rails are welded to the folding hinge.

14. The Defendant owed a duty to use ordinary care to design the subject ramps in such a manner as to make them reasonably safe for their intended purpose and for any reasonably foreseeable purpose.

15. The Defendant was careless and negligent in that it failed to use ordinary care in designing the subject ramps in that the single support cross member on the underside of the ramp, when placed adjacent to the welded joint of the side rail and folding hinge created a weak point in the construction of the ramp causing it to be prone to fracture and break when carrying loads of less weight than the advertised load capacity and, as such, was unreasonably dangerous, not reasonably safe for its intended purpose or for the foreseeable purpose for which the Plaintiff was utilizing the ramps.

16. In addition, the material dimensions of the subject ramps as designed by the Defendant were insufficient to meet the advertised load capacity of the ramps, which were 1500 pounds per pair and 750 pounds per ramp, which deficiency constituted a design defect.

17. The Defendant knew or should have known that the ramps were potentially and unreasonably dangerous given these design defects and that injury to persons, including the Plaintiff, could be anticipated.

18. The Defendant had a duty to warn its customers, including the Plaintiff, that, given the weak point created at the aforesaid weld spot by the addition of the single underside

support cross member as well as given the insufficient material dimensions of the ramps to support the advertised load capacity, the ramps were unreasonably dangerous and not reasonably safe for their intended purposes and it breached this duty of care by carelessly and negligently failing to warn its customers, including the Plaintiff.

19. The Defendant, in the design of the ramps, had a duty to perform inspections and testing that are reasonably necessary to confirm that the ramps were safe for their intended use and for any reasonably foreseeable purposes, such as those it advertised the ramps for and what the Plaintiff was utilizing them for.

20. The Defendant was careless and negligent in not performing sufficient inspections and testing that were necessary to confirm that the ramps were safe for their intended use and for any reasonably foreseeable purposes, including those that it advertised the ramps for and what the Plaintiff was utilizing them for.

## Count II – Breach Of Express Warranty

21. The Defendant marketed, sold and distributed to its customers, including the Plaintiff, the subject ramps by stating that they were safe to utilize for, *inter alia*, loading ATVs onto other vehicles, including pickup trucks such as the Plaintiff's, and that the ramps were rated for a load capacity of up to 1500 pounds per pair and 750 pounds per ramp.

22. The marketing, sale and distribution by the Defendant to its customers, including the Plaintiff, that the subject ramps were designed and safe for, *inter alia*, loading ATVs onto vehicles such as pickup trucks and were rated for up to 1500 pounds load capacity per pair and 750 pounds load capacity per ramp constituted an express warranty.

23. The Plaintiff relied on the marketing, sale and distribution by the Defendant that its ramps were designed for and safe to utilize to load equipment, such as ATVs, onto vehicles

including pickup trucks and that their load capacity was 1500 pounds per pair and 750 pounds per ramp such that it became a part of the basis of the sale and/or bargain between the Plaintiff and Defendant.

24. When the Defendant made the aforementioned statements, both in writing and depicted in photographs, through its website, advertising and other mediums, relating to the subject ramps that it designed, manufactured, sold and distributed, such become a part of the basis of the bargain between it and the Plaintiff and created an express warranty that the ramp would conform to such statements.

25. The Defendant breached the express warranty provided to the Plaintiff by selling and providing him with ramps that did not conform to the statements made that were a basis of the sale and/or bargain, to-wit: that the ramp was intended and safe to use for loading ATVs onto trucks and had a load capacity of 1500 pounds per pair and 750 pounds per ramp.

### Count III – Breach Of Implied Warranty

26. The Defendant created an implied warranty that the subject ramps could be used for a particular purpose, to-wit: to load equipment, including ATVs, onto vehicles such as pickup trucks and had a load capacity of 1500 pounds per pair and 750 pounds per ramp, and knew or should have known that customers, including the Plaintiff, would rely on the Defendant's skill and judgment in selecting the ramps for purchase and for uses consistent with those particular purposes.

27. The Plaintiff relied on the Defendant's skill and judgment in selecting the subject ramps and that they would be safe and reliable as a means to load an ATV onto a truck and had a load capacity of 1500 pounds per pair and 750 pounds per ramp.

28. The Defendant breached its implied warranty for fitness for a particular purpose in selling to the Plaintiff ramps that were not fit for their particular purpose, which was as a safe means of loading an ATV onto a truck and carried a load capacity of 1500 pounds per pair and 750 pounds per ramp.

29. The Defendants created an implied warranty of merchantability that the subject ramps would be fit for the purposes for which they would be ordinarily used, to-wit: as a means of loading equipment, including ATVs, onto trucks and having a load capacity of 1500 pounds per pair and 750 pounds per ramp.

30. The Defendant created an implied warranty of merchantability that the subject ramps would conform to the promises or affirmations made in support of it, to-wit: that they were safe as a means of loading equipment, including ATVs, onto trucks and having a load capacity of 1500 pounds per pair and 750 pounds per ramp.

31. The Defendant breached the implied warranty of merchantability in that the subject ramps were not fit for the purposes for which the Defendant knew they would be ordinarily used and that they did not conform to the promises or affirmations made by the Defendant in support all as set forth above.

32. The Plaintiff relied to his detriment on the implied warranties of fitness for a particular purpose and merchantability provided to him by the Defendant and such reliance was reasonably foreseeable to the Defendant.

### Count IV – Virginia Consumer Protection Act

33. At all times relevant herein, the Defendant was a supplier who was advertising, soliciting and engaging in consumer transactions in Virginia within the meaning of the Virginia Consumer Protection Act (Va. Code §59.1-196, et seq.).

34. The sale in Virginia by the Defendant to the Plaintiff of the subject ramps constitutes a consumer transaction withing the meaning of the Virginia Consumer Protection Act.

35. In advertising, soliciting and ultimately engaging in the consumer transaction with the Plaintiff, namely the sale and purchase of the subject ramps, the Defendant violated the provisions of the Virginia Consumer Protection Act in the following manners:

    a. Misrepresenting that the ramps had the certain characteristics, uses and benefits of being a safe means of loading equipment, including ATVs, onto vehicles such as trucks and had a load capacity of 1500 pounds per pair and 750 pounds per ramp.

    b. Misrepresenting that the ramps were of a particular standard, quality or grade, to-wit: that they had a load capacity of 1500 pounds per pair and 750 pounds per ramp.

36. The ramps sold to the Plaintiff by the Defendant were unsafe as a means to load an ATV onto a truck and did not have a load capacity of 1500 pounds per pair and 750 pounds per ramp.

37. The Plaintiff relied to his detriment on the Defendant's advertising and soliciting of the subject ramp as being designed for and a safe means of loading an ATV onto a truck and having a load capacity of 1500 pounds per pair and 750 pounds per ramp.

38. As a direct and proximate result of the Defendant's violations of the Virginia Consumer Protection Act, the Plaintiff suffered actual damages as set forth below.

## Conclusion

39. At all times set forth herein, the Defendant acted by and through its employees and/or agents for all acts, commissions and omissions as set forth above.

40. The Defendant is vicariously liable for all negligent acts, all acts resulting in breaches of the aforementioned warranties and all violations of the Virginia Consumer Protection Act committed by its employees and/or agents while same were in the course and scope of their employment and/or agency with the Defendant.

41. The Plaintiff in no way caused or contributed to the incident and/or his injuries.

42. The negligent acts as set forth above as well as the breaches of warranties and violations of the Virginia Consumer Protection Act each constituted proximate causes of the incident, injuries and damages suffered by the Plaintiff.

43. As a direct and proximate result of the above acts of the Defendant, the Plaintiff was caused to sustain serious injuries; has been prevented from transacting his business, personal affairs and household duties; has suffered great pain of body and mind and inconvenience; has incurred hospital, doctors' and related bills in an effort to be cured of said injuries; has lost wages from his gainful employment; and has suffered permanent disfigurement and deformity.

WHEREFORE, the Plaintiff demands judgment against the Defendant in the amount of TWO MILLION DOLLARS ($2,000,000.00) with prejudgment interest thereon from January 26, 2020, reasonable attorney's fees, the costs of these proceedings, and such further equitable and legal relief as the Court may deem just.

TRIAL BY JURY IS HEREBY DEMANDED.

MICHAEL MARELLA

*/s/ Keith J. Leonard*

Keith J. Leonard, Esquire
VSB No. 65668
Nicholas L. Woodhouse, Esquire
VSB No. 75583
Huffman & Huffman, Brothers-in-Law, P.L.L.C.
12284 Warwick Boulevard, Suite 2A
Newport News, VA 23606
Tel: 757-599-6050
Fax: 757-591-2784
kleonard@huffmanhuffman.com
nwoodhouse@huffmanhuffman.com
Counsel for the Plaintiff